1 | BARRY J. PORTMAN
Federal Public Defender
2 | DANIEL P. BLANK
Assistant Federal Public Defender
3 | 450 Golden Gate Avenue
San Francisco, CA  94102
4 | Telephone:  (415) 436-7700

5 | Counsel for Defendant ESPERANTE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | No. CR 08-0431 PJH |
|---|---|---|
| Plaintiff, | ) ) | MOTION FOR AMENDMENT OF CONDITIONS OF PRETRIAL RELEASE |
| v. | ) ) | |
| JEREMY CRUZ ESPERANTE, | ) ) | Honorable Phyllis J. Hamilton September 10, 2008 |
| Defendant. | ) ) | 1:30 p.m. |

TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.    STANDARD OF REVIEW FOR MAGISTRATE JUDGE'S
          RELEASE CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    II.   THIS COURT SHOULD ORDER RELEASE WITHOUT
          CONTESTED CONDITION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          A.   MR. ESPERANTE HAS REBUTTED PRESUMPTION
               OF DETENTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          B.   MR. ESPERANTE DOES NOT POSE A SIGNIFICANT
               RISK OF SUICIDE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

               1.   Mr. Esperante May Proceed By Proffer . . . . . . . . . . . . . . . . . . . 11

               2.   Further Evaluation is Not Authorized by
                    the Bail Reform Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Estelle v. Smith*,
   451 U.S. 454 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Chen*,
   820 F. Supp. 1205 (N.D. Cal. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Crowell*,
   2006 WL 3541736 (W.D.N.Y. Dec. 7, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Gardner*,
   523 F. Supp. 2d 1025 (N.D.Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Koenig*,
   912 F.2d 1190 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*United States v. Leyba*,
   104 F. Supp. 2d 1182 (S.D. Iowa 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*United States v. Martin-Trigona*,
   767 F.2d 35 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Moore*,
   607 F. Supp. 489 (N.D. Cal. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Nicholas*,
   681 F. Supp. 527 (N.D. Ill. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. O'Brien*,
   895 F.2d 810 (1st Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Rae*,
   CR 08-0489 JSW (JCS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Scott*,
   450 F.3d 863 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Terrones*,
   712 F. Supp. 786 (S.D. Cal. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Torres*,
   2008 WL 2791883 (W.D. Tex. July 18, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Winsor*,
   785 F.2d 755 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**FEDERAL STATUTES**

18 U.S.C. § 3142(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 3142(c)(1)(B)(x) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 U.S.C. § 3142(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 3142(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 3142(f)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18 U.S.C. § 3142(f)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 3142(g)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 3145 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 3153(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. § 3153(c)(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. § 4241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 U.S.C. §§ 4247, 4248 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# INTRODUCTION

Defendant Jeremy Esperante respectfully moves the Court to amend the magistrate judge's order of pretrial release by deleting the condition that he first submit to an unlimited psychiatric evaluation by a Pretrial Services retained expert outside the presence of his counsel. Mr. Esperante is amenable to all other conditions of release proposed by Pretrial Services and ordered by the magistrate judge. Although Mr. Esperante's background gives some reason to be concerned about his potential for suicidality, a competent psychological evaluation has already determined that he does not pose a significant risk of suicide or self-injury at this time, and that his release to his father's home will only serve to further diminish any such risk.

# FACTUAL AND PROCEDURAL BACKGROUND

Jeremy Esperante was born in California in 1973 to a family of Filipino descent. *See* Declaration of Daniel P. Blank in Support of Motion for Amendment of Conditions of Pretrial Release (filed concurrently with this memorandum) [hereinafter "Blank Decl."] ¶ 2. As his father was in the military, Mr. Esperante lived in Germany until he was about 5 or 6 years old. *Id.* Since that time, Mr. Esperante has lived his entire life in northern California, mainly in Vallejo, except for a short period after his parents were divorced when he lived with his mother in Las Vegas. *Id.* After Mr. Esperante graduated from high school in Vallejo in 1991, he enlisted in the Army reserves. *Id.* Mr. Esperante was honorably discharged from the Army reserves in 1998 with the rank of Private First Class. *Id.* Mr. Esperante has held steady employment in office jobs. *Id.* Most recently, Mr. Esperante was employed starting in 2004 as an intake representative at Managed Health Network, a comprehensive mental and behavioral health services company. *Id.* During this time, Mr. Esperante was also taking classes at San Francisco State University, and he received his B.A. in Communications in January 2008. *Id.* Mr. Esperante has no prior criminal record of any kind. *Id.*

On February 5, 2008, a federal search warrant was executed by FBI Agents at the home of Mr. Esperante, an apartment where he lived by himself, on suspicion that it contained evidence that he possessed and was trading images of child pornography. *Id.* ¶ 3. Mr. Esperante was cooperative

with the Agents and signed a *Miranda* waiver as well as a form giving consent to search his vehicle. *Id.* The Agents seized Mr. Esperante's computer, which appeared to the Agents to be actively downloading child pornography, but they did not arrest Mr. Esperante. *Id.*

Shortly after the Agents left the apartment, Mr. Esperante attempted to cut his wrist with at first a steak knife and then a butcher knife. *Id.* ¶ 4. Mr. Esperante soon became frightened and began telephoning friends and family members. *Id.* One friend came to Mr. Esperante's apartment and, after being let in by Mr. Esperante, called 911. *Id.* Mr. Esperante was taken to S.F. General Hospital that night and transferred the next day to the Langley Porter Psychiatric Hospital and Clinics at the University of California, San Francisco. *Id.*

One week later, on February 12, 2008, FBI Agents "found voluminous quantities" of what appeared to them to be child pornography on Mr. Esperante's seized computer. *Id.* ¶ 5. Nevertheless, Mr. Esperante still was not arrested until several months later. *Id.* Nor was any effort made to limit Mr. Esperante's ability to travel, or to curtail or even monitor use of a computer or his interaction with children. *Id.*

On March 6, 2008, Mr. Esperante successfully completed four weeks of intensive in-patient treatment at Langley Porter, and was then referred for out-patient treatment. *Id.* ¶ 6. On March 28, 2008, Mr. Esperante successfully completed his course of out-patient treatment at Langley Porter. *Id.* Eager to continue his progress, Mr. Esperante then began individual psychotherapy with a licensed psychologist in Vallejo. *Id.* The cost of the individual therapy was defrayed by Mr. Esperante's health insurance through his employer. *Id.* Mr. Esperante's at-risk level for self-injury was soon determined to be "very low." *Id.*

On or about June 29, 2008, Mr. Esperante learned that his division at Managed Health Network was being reorganized and moved from San Rafael to Irving, Texas. *Id.* ¶ 7. As a result, Mr. Esperante was subsequently laid off with a severance package, but with a cessation of his employee health insurance coverage. *Id.* Mr. Esperante intended to obtain interim health insurance through COBRA in order to continue his individual psychotherapy but first planned with his severance

1  money a short trip abroad to Singapore, where he has distant relatives. *Id.* Unbeknownst to Mr.
2  Esperante, a federal indictment against him was returned on July 1, 2008, and filed under seal. *Id.*
3  While in Singapore, Mr. Esperante learned that his family's residence had been searched by the FBI.
4  *Id.* Nevertheless, Mr. Esperante returned to San Francisco as scheduled and was arrested as expected
5  at the airport. *Id.* His initial appearance before the federal magistrate court was July 30, 2008. *Id.*

6        That same day, undersigned counsel was appointed to represent Mr. Esperante and he was
7  interviewed by Pretrial Services. *Id.* ¶ 8. During this interview, Mr. Esperante openly described his
8  personal history, including his suicidal gesture, hospitalization and mental health treatment. *Id.* A
9  detention hearing was held on August 4, 2008. *Id.* Although the case carried a statutory
10 presumption for detention, Pretrial Services recommended release on conditions. *Id.* The
11 government objected to Mr. Esperante's release and by way of proffer described the alleged conduct
12 underlying the charges against Mr. Esperante. *Id.* Over a dozen family members attended the
13 hearing in support of Mr. Esperante. *Id.* Nevertheless, the magistrate judge indicated that he had
14 concerns that were not addressed by the Pretrial Services recommendation. *Id.* Specifically, in light
15 of Mr. Esperante's suicide attempt, the magistrate judge indicated that he wanted a mental health
16 evaluation of Mr. Esperante conducted by Pretrial Services so that he could determine what type of
17 counseling to order as a condition of his release. *Id.* Undersigned counsel responded that he did not
18 object to such an evaluation, as long as it was limited to the area of suicidality (rather than, for
19 example, the facts of the current prosecution against Mr. Esperante) and counsel could be present
20 during this evaluation to safeguard Mr. Esperante's rights. A further detention hearing was set for
21 August 20, 2008, to consider the results of the evaluation. *Id.*

22       However, on August 6, 2008, Pretrial Services sent a memorandum to the magistrate judge
23 noting a problem that had arisen with regard to the evaluation. *Id.* ¶ 9. Specifically, the psychiatrist
24 working with Pretrial Services indicated that, although he acknowledges the concerns raised by
25 defense counsel, he was unwilling to allow any other parties to be present during the evaluation. *Id.*
26 Nevertheless, the psychiatrist stated that he would not question Mr. Esperante "about any matters

1   that relate to the instant offense." *Id.* Accordingly, Pretrial Services asked that the magistrate judge
2   set an earlier status hearing for August 8, at 9:30 a.m. *Id.*

3        As neither government counsel nor defense counsel were available on August 8, the
4   government submitted an unopposed motion and proposed order to take the status hearing set for that
5   date off calendar in favor of the status hearing previously set for August 20. *Id.* ¶ 10. Nothing about
6   the evaluation of Mr. Esperante was addressed in the unopposed motion and proposed order. *Id.* On
7   the morning of August 8, before the calling of the 9:30 a.m. calendar, the magistrate judge filed the
8   executed order taking the matter off calendar, but added the following text above his signature:
9   "Defense counsel's request to attend the evaluation session is DENIED. Evaluation shall proceed."
10  *Id.* ¶ 10 & Att. A. During the 9:30 a.m. calendar on August 8, the magistrate judge then began to
11  address this issue, in open court and on the record, even though neither counsel nor Mr. Esperante
12  were present in the courtroom. *Id.* ¶ 10. Another defense counsel, who happened to be in the
13  courtroom and who happened to be familiar with Mr. Esperante's case, raised an objection and the
14  matter was reset for a status hearing on August 12, 2008, at 9:30 a.m. *Id.*

15       At the hearing on August 12, 2008, counsel for Mr. Esperante objected to the fact that a hearing
16  had been conducted outside his presence on August 8, and made a full proffer on the record intended
17  to address each of the concerns raised by the magistrate judge, including that he planned to address
18  the issue of Mr. Esperante's potential for suicidality by having him evaluated by a retained expert
19  psychologist. *Id.* ¶ 11. However, the magistrate judge responded that Mr. Esperante would not be
20  released unless he agreed to an evaluation by a Pretrial Services psychiatrist, without defense counsel
21  being present and with no limits on the scope of the evaluation. *Id.* For example, in response to a
22  request for clarification by counsel for Mr. Esperante, the magistrate judge explained that the Pretrial
23  Services psychiatrist could administer a penile plethysmograph or any other test he saw fit. *Id.* At
24  the request of Mr. Esperante, the magistrate judge issued an order setting forth the required
25  conditions of release so that he could seek review in the district court. *Id.* That order issued on
26  August 13, 2008. *Id.* ¶ 11 & Att. B.

MOTION FOR AMENDMENT OF
CONDITIONS OF PRETRIAL RELEASE                - 4 -

1   Mr. Esperante made his initial appearance before this Court on August 13, 2008. *Id.* ¶ 12.
2   After being advised of the status of the case, the Court indicated that something needed to be done to
3   address concerns about Mr. Esperante's potential for suicidality. *Id.* However, the Court
4   emphasized that the solution need not be the one ordered by the magistrate judge and urged the
5   parties to approach the issue cooperatively and creatively. *Id.* Specifically, the Court indicated that
6   it was not inclined to detain Mr. Esperante, as long as this issue could be addressed in some way,
7   since both Pretrial Services and the magistrate judge had determined that he can and should be
8   released. *Id.* A briefing schedule before this Court was set for a motion to amend conditions of
9   release to be filed on August 27, and heard on September 10, 2008. *Id.*

10  On August 20, 2008, the parties appeared briefly before the magistrate judge seeking
11  clarification of the release order. *Id.* ¶ 13. In response, the magistrate judge clarified that, although a
12  particular parcel of real property was named in the order, any property owned by the family with a
13  total of at least $200,000 in equity would suffice. *Id.* In addition, the magistrate judge was advised
14  that Mr. Esperante's father's home in Sacramento was deemed by Pretrial Services to be a suitable
15  place for Mr. Esperante to reside if released, and that if released there his father would take extended
16  family leave from work to serve as his custodian. *Id.*

17  On August 21, 2008, Mr. Esperante was evaluated regarding his potential for suicidality by Dr.
18  Rebecca Bauknight, Ph.D., a licensed clinical psychologist with over fifteen years experience in the
19  field. *Id.* ¶ 14. In particular, Dr. Bauknight has been conducting assessments of the suicidal
20  potential of patients since 1990. *Id.* This evaluation occurred during a contact visit at the Santa Rita
21  jail in Alameda County. *Id.* Prior to meeting with Mr. Esperante, Dr. Bauknight reviewed records of
22  his in-patient and out-patient treatment at Langley Porter and reviewed a letter from Mr. Esperante's
23  private psychotherapist. *Id.* Based upon her evaluation of Mr. Esperante and her review of these
24  records, Dr. Bauknight developed an opinion regarding Mr. Esperante's potential for suicidality. *Id.*
25  Her opinion is that Mr. Esperante does not pose a significant risk of suicide or self-injury at this time.
26  *Id.* Moreover, she believes that any risk of suicide would only be diminished by his release from

custody to live with his family. *Id.* Finally, she recommends that Mr. Esperante continue his individual psychotherapy and also give serious consideration to a course of treatment with anti-depressant medication. *Id.*

**ARGUMENT**

Following the recommendation of Pretrial Services, the magistrate judge has ordered Mr. Esperante released. *See* Blank Decl. ¶ 11 & Att. B.[1] However, the magistrate judge added certain conditions to the terms of release proposed by Pretrial Services. Mr. Esperante is amenable to all of the additional conditions ordered by the magistrate judge except one: that he promise to submit to a psychiatric evaluation by a Pretrial Services expert without any limits on the scope of the evaluation and without the presence of his counsel.

Mr. Esperante respectfully submits that there is no authority in the Bail Reform Act to detain him for declining to submit to such an unlimited psychiatric evaluation, when he is otherwise eligible for release. Nevertheless, in light of Mr. Esperante's background, it is understood that any potential for suicidality should be addressed before he is released. To this end, Mr. Esperante was recently evaluated by an expert psychologist who has determined that he does not pose a significant risk of suicide or self-injury at this time. *See id.* ¶ 14. Accordingly, the Court should amend the release order to delete the sole contested condition ordered by the magistrate judge.

**I. STANDARD OF REVIEW FOR MAGISTRATE JUDGE'S RELEASE CONDITIONS**

A person ordered released by a magistrate judge may seek review of the release order by filing, with the Court having original jurisdiction over the offense, a motion for amendment of the conditions of release. 18 U.S.C. § 3145. The Court's review of the magistrate judge's ordered conditions of release is "de novo." *United States v. Koenig,* 912 F.2d 1190, 1192 (9th Cir. 1990). As such, the Court is to "review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id.* at 1193. "If the

---

[1] As noted above, the magistrate judge subsequently clarified particular portions of this order in open court, including the property required to be posted. *See* Blank Decl. ¶ 13.

1 performance of that function makes it necessary or desirable for the district judge to hold additional
2 evidentiary hearings, it may do so, and its power to do so is not limited to occasions when evidence
3 is offered that was not presented to the magistrate." *Id.* (citation omitted).

4 **II.    THIS COURT SHOULD ORDER RELEASE WITHOUT CONTESTED CONDITION**

5    Mr. Esperante respectfully requests that the Court delete the single contested condition of
6 release ordered by the magistrate judge, regarding his unlimited evaluation by a Pretrial Services
7 retained psychiatrist outside the presence of his counsel. The magistrate judge correctly determined
8 that Mr. Esperante had rebutted the statutory presumption of his detention and that the government
9 had failed to meet its burden of proving that there are no combination of conditions that can
10 adequately ensure Mr. Esperante's appearance in court and the safety of the community. However,
11 the magistrate judge exceeded his authority under the Bail Reform Act by ordering the open-ended
12 evaluation of Mr. Esperante by a Pretrial Services retained psychiatrist outside the presence of his
13 counsel. *See* Blank Decl. ¶ 11. Mr. Esperante respectfully proffers that a competent evaluation has
14 already determined that he does not pose a significant risk of suicidality at this time. *See id.* ¶ 14.
15 No further evaluation should be required as a precondition of his release.

16    **A.    MR. ESPERANTE HAS REBUTTED PRESUMPTION OF DETENTION**

17    The offenses charged against Mr. Esperante carry a rebuttable statutory presumption of
18 detention. *See* 18 U.S.C. § 3142(e). However, it has long been recognized that "the rebuttable
19 presumption shifts only a burden of production to defendant." *United States v. Moore,* 607 F. Supp
20 489, 497 (N.D. Cal. 1985). As such, the government "retains the burden throughout the proceeding"
21 of proving that no condition or combination of conditions would reasonably assure the defendant's
22 appearance at trial or the safety of the community. *Id.* "The defendant need only produce some
23 credible evidence forming a basis for his contention that he will appear and not pose a threat to the
24 community in order to rebut the presumption." *United States v. Chen,* 820 F. Supp. 1205, 1207
25 (N.D. Cal. 1992) (citation and internal quotation marks omitted).
26 ///

MOTION FOR AMENDMENT OF
CONDITIONS OF PRETRIAL RELEASE          - 7 -

Mr. Esperante agrees with the determination of the magistrate judge that he has rebutted the presumption in this case. As an initial matter, the information in the Pretrial Services report recommending his release on conditions itself serves as "some credible evidence" rebutting the presumption. *See, e.g., United States v. Nicholas,* 681 F. Supp. 527, 529 (N.D. Ill. 1988). Moreover, Mr. Esperante's willingness to agree to electronic monitoring as a condition of his release also rebuts the presumption, as does his family's willingness to secure a bond with real property, and his father's willingness to serve as custodian. *See, e.g., United States v. O'Brien,* 895 F.2d 810, 816 (1st Cir. 1990) (presumption rebutted by electronic monitoring and real property); *see also United States v. Leyba,* 104 F. Supp.2d 1182, 1183-84 (S.D. Iowa 2000) (presumption rebutted by electronic monitoring and third-party custodian). Thus, Mr. Esperante has more than rebutted the statutory presumption for detention in cases like his, and the burden remains on the government to prove that no combination of conditions will adequately assure Mr. Esperante's appearance in court and the safety of the community.

Turning to the facts of the case, Mr. Esperante is a U.S. citizen with very strong ties to the community in northern California. *See* Blank Decl. ¶ 2. With the exception of a few distant relatives, his entire family is here, except for his mother who lives not far away in Las Vegas. *See id.* Mr. Esperante has no prior criminal record of any kind. *See id.* He is a college graduate and a veteran of the U.S. Army reserves who has demonstrated a significant history of stable employment. *See id.*

After seizing Mr. Esperante's computer in February and allegedly finding "voluminous quantities" of child pornography on it, the government made no effort to indict or arrest him for several months. *See id.* ¶¶ 3-5. No effort was even made to limit or monitor Mr. Esperante's foreign travel, his use of a computer or his contact with children. *See id.* Presumably, the government would have made some effort to expeditiously arrest a defendant who truly posed a serious risk of flight or danger to the community. In fact, Mr. Esperante had every opportunity to flee but did not. Mr. Esperante learned while on vacation in Singapore in July that federal agents had searched his

MOTION FOR AMENDMENT OF
CONDITIONS OF PRETRIAL RELEASE                     - 8 -

1  family's residence, a strong indicator that he was likely to be arrested on his return to the country.
2  *See id.* ¶ 7. Nevertheless, Mr. Esperante did voluntarily return as scheduled to face his charges and
3  was arrested as expected at the airport. *See id.*

4  Apart from the conduct charged in the indictment, the government has not proffered facts
5  suggesting that Mr. Esperante poses any danger to the community whatsoever; and, while the charges
6  are undoubtedly serious, without more they do not demonstrate that he poses such a danger that he
7  cannot be released on any combination of conditions, having rebutted the statutory presumption. For
8  example, the charges do not allege that Mr. Esperante was manufacturing child pornography or was
9  ever in contact with any children.

10  In short, the Court should uphold the magistrate judge's determination that Mr. Esperante has
11  rebutted the presumption of detention and that the government has failed to meet its burden of
12  proving that there are no combination of conditions that can reasonably assure the appearance of Mr.
13  Esperante in court and the safety of the community.

14  **B.   MR. ESPERANTE DOES NOT POSE A SIGNIFICANT RISK OF SUICIDE**

15  Notwithstanding the credible evidence presented by Mr. Esperante that he will not flee or pose
16  a danger to the community, the government has argued that Mr. Esperante cannot be released
17  because he poses a significant risk of suicide. The government's argument is both legally unsound
18  and factually inaccurate. The Court should reject the government's argument and order him released.

19  As an initial matter, it is not clear as a matter of statutory construction that a potential for
20  suicidality is an issue that may properly be considered under the Bail Reform Act in determining
21  whether to detain a defendant before trial. The Bail Reform Act is generally concerned with
22  balancing the presumptively innocent defendant's liberty interest against the government's
23  prosecutorial interest in reasonably assuring two things: the appearance of the defendant in court,
24  and "the safety of any other person and the community." 18 U.S.C. § 3142(f). Here, the government
25  cites no authority to suggest that under the Bail Reform Act a potential for suicidality is the
26  equivalent of a risk of flight. Rather, the government has argued, again without citation to authority,

MOTION FOR AMENDMENT OF
CONDITIONS OF PRETRIAL RELEASE            - 9 -

that a defendant's potential danger to himself warrants detention.  However, the text of the Bail Reform Act plainly refers to reasonably assuring the safety "of any *other* person."  *Id.* (emphasis added).  Thus, it does not appear that a defendant may lawfully be detained pretrial simply because he has some potential for suicidality.

Nevertheless, it seems evident that potential for suicidality is an appropriate area of concern in fashioning conditions of release where as here there is actual evidence in the record indicating that potential.  To address this concern, Mr. Esperante retained an expert psychologist, Dr. Rebecca Bauknight, to develop an opinion as to his risk of suicide or self-injury if released.  *See id.* ¶ 14.  Mr. Esperante respectfully proffers for the Court's consideration Dr. Bauknight's opinion that he does not pose a significant risk of suicide or self-injury at this time.  *See id.*  Dr. Bauknight further believes that any risk of suicide would only be diminished by his release from custody to live with his family.  *See id.*  Finally, Dr. Bauknight recommends that Mr. Esperante continue his individual psychotherapy and also give serious consideration to a course of treatment with anti-depressant medication.  *See id.*  Dr. Bauknight is an established expert in this field and her opinion is based upon an in-person interview with Mr. Esperante, as well as a review of his relevant medical records.  *See id.*  Thus, Mr. Esperante respectfully submits that no further evaluation is needed as a precondition for his release.

The government has previously indicated that it would raise two objections to the Court's reliance on Dr. Bauknight's opinion regarding Mr. Esperante's potential for suicidality.  First, the government objects to Mr. Esperante proceeding by proffer with respect to Dr. Bauknight's opinion, rather than by calling Dr. Bauknight as a witness and then permitting the government to call its own expert witness, presumably after conducting its own evaluation of Mr. Esperante.  Second, the government has argued that an open-ended evaluation of Mr. Esperante outside the presence of defense counsel, of the type ordered by the magistrate judge, is the type of evaluation that should be conducted.  Each of these anticipated objections is addressed in turn below.

///

### 1.     Mr. Esperante May Proceed By Proffer

Notwithstanding the government's objection, the Bail Reform Act explicitly affords the defendant at a detention hearing the right "to present information by proffer or otherwise," since "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." 18 U.S.C. § 3142(f)(2). The Ninth Circuit has interpreted this provision as allowing the government to present information by proffer as well. *See, e.g., United States v. Winsor,* 785 F.2d 755, 756 (9th Cir. 1986) ("As in a preliminary hearing for probable cause, the government may proceed in a detention hearing by proffer or hearsay."). In fact, in this very case, government counsel has proceeded by way of proffer regarding the alleged conduct underlying the charges against Mr. Esperante. *See* Blank Decl. ¶ 8.

To date, the government has cited no authority in support of its contention that, despite the plain language of the Bail Reform Act, and its own presentation of information by way of proffer in this case, Mr. Esperante may not proffer to the Court Dr. Bauknight's opinion that he does not pose a significant risk of suicide or self-injury. As expressly authorized by the Act, the Court should hold that Mr. Esperante may proceed by way of proffer to present information to the Court regarding his potential for suicidality, as well the relative impacts of incarceration on suicidality, and recommendations for his treatment while on release.[2]

///

///

---

[2] Dr. Bauknight has not yet completed a written report summarizing her opinion and the bases for it. Mr. Esperante expects to receive the report prior to the hearing on September 10. In light of the proffer of Dr. Bauknight's opinion through the sworn declaration of undersigned counsel, an officer of the Court, signed under penalty of perjury, it does not appear that the submission of a written report from Dr. Bauknight would be required by the Bail Reform Act. However, as a further show of good faith to the Court, Mr. Esperante would be willing once it is received to submit a copy of the written report *ex parte* for the Court's exclusive consideration, if the Court will then either return it to him or file it under seal for Court access only. *Cf. United States v. Terrones,* 712 F. Supp. 786 (S.D. Cal. 1989) (holding that in exceptional circumstances the government may submit information regarding detention to the court *in camera*). This was the procedure followed in a recent case in this district, *United States v. Norman Rae,* CR 08-0489 JSW (JCS), where the suicidality of the defendant facing identical charges was likewise at issue.

### 2. Further Evaluation is Not Authorized by the Bail Reform Act

Mr. Esperante respectfully submits that, having addressed in a suitable way the legitimate concern about his potential for suicidality, no further psychiatric or psychological evaluation is warranted as a precondition for his release.  In particular, Mr. Esperante continues to object to the release condition ordered by the magistrate judge, that he submit to an open-ended psychiatric evaluation by a Pretrial Services retained expert outside the presence of his counsel.  Such an evaluation is simply not authorized by the Bail Reform Act.

As a starting point, it is not at all clear that the Bail Reform Act authorizes any kind of mental evaluation of a defendant seeking release after arrest.  Broadly, the Act allows a defendant to be detained on the basis of flight risk or danger to the community.  As discussed above, the Act on its face refers to danger to others, and nowhere indicates that the Court may detain a defendant on the basis of danger to himself.  *See, e.g.*, 18 U.S.C. § 3142(b) (Court shall release a defendant unless it appears that the person will not appear or will "endanger the safety *of any other person* or the community.") (emphasis added).

Although the Act is quite specific as to powers the Court has with respect to conducting detention hearings and fashioning conditions of release, there are only two provisions in the Act which confer upon the magistrate judge the power to order a examination of any kind: (1) the power of the court to order a medical examination of a defendant whose detention hearing has been continued "to determine whether such person is an addict," 18 U.S.C. § 3142 (f)(2)(B);  and (2) the power to order "an inquiry into the source of the property to be designated . . . as collateral to secure a bond . . . ." 18 U.S.C. § 3142(g)(4).  The power to impose a mental examination of the type ordered by the magistrate judge in this case is totally absent from the Act.  It is for that reason that the only court which appears to have been called upon to address this issue has held that a magistrate judge may not order a psychiatric examination in order to determine the potential danger posed to others or the community by a defendant. *United States v. Martin-Trigona*, 767 F.2d 35, 38 (2d Cir. 1987).

The magistrate judge's order in this case relies upon *Estelle v. Smith,* 451 U.S. 454 (1981), for the proposition that a defendant does not have a "constitutional right to have counsel attend a pretrial psychiatric examination." Order at 5. However, this reliance is twice mistaken. As an initial matter, the issue in *Estelle v. Smith* was not bail but competency, which carries an entirely different set of concerns, and for which such an evaluation is statutorily mandated. *See* 451 U.S. at 457; *see also* 18 U.S.C. § 4241. Moreover, the objection raised here by Mr. Esperante is not that he has a constitutional right to have his counsel attend a statutorily mandated evaluation but rather that the magistrate judge lacks statutory authority to order the evaluation or in the alternative to detain him if he does not consent to the evaluation.

Nor is it any answer to claim, as the magistrate judge has done in this case, that because the Bail Reform Act confers upon the court the power to order mental health treatment as a condition of release (18 U.S.C. § 3142 (c)(1)(B)(x)), there is an implicit corresponding right to order an open-ended examination to determine what kind of counseling would be appropriate. In other words, the magistrate judge's argument in this case is that because there exists a right to address a problem, the court should be free to go fishing to see if any such problem exists. Even in cases like this, where a specific mental health issue of Mr. Esperante has been identified, *Martin-Trigona* indicates that such an evaluation cannot be ordered simply to predict whether a client somehow poses a danger to himself or others.

*Martin-Trigona* not only fairly reads the Bail Reform Act, but it makes great sense from a policy perspective. Most defendants charged in federal court are depressed, and many have substantial mental issues. Whether it a sex crime of some other offense, it would be most unwise to give a magistrate judge the power to force a defendant to undergo a mental examination (with the implied threat that a refusal to do so would result in an order of detention) whenever the magistrate judge felt that such an examination might help it in determining whether to detain, or what conditions of release to impose. Such examinations would soon extend to issues well beyond the issue of suicide, and would likely become the rule rather than an exception. Such an order

MOTION FOR AMENDMENT OF
CONDITIONS OF PRETRIAL RELEASE                - 13 -

undermines the entire statutory structure of a detention hearing, where the Government bears the burden of proving that a defendant is either a flight risk or danger to the community, once any presumption of detention has been rebutted by the defendant. *See id*. at 38.[3]

Even if the courts were to restrict such examinations to all defendants charged with "sex crimes," ordering a defendant to undergo an examination in every "sex case" would run afoul of the Ninth Circuit's decision in *United States v. Scott,* 450 F.3d 863 (9th Cir. 2006). In *Scott,* the issue was whether a court could order all defendants released on bail to be subject to drug testing and searches on less than probable cause. The Ninth Circuit said they could not, because there was no proof by way of empirical studies or legislative history that all drug addicts posed either a danger to the community or risk of non-appearance. The court essentially held that before a defendant could be forced to give up a constitutional right (in that case, his Fourth Amendment rights), a individualized showing of danger or flight risk needed to be shown: "the Supreme Court upheld the constitutionality of a bail system where pretrial defendants could be detained only if the need to detain them was demonstrated on an individualized basis." *Id*. at 874. As the court went on to hold, "[n]either *Salerno* nor any other case authorizes detaining someone in jail while awaiting trial, or the imposition of special bail conditions, based merely on the fact of arrest for a particular crime." *Id.*

By implication, it could certainly be argued that a rule requiring all defendants charged with certain crimes to undergo psychiatric testing (thereby waiving their Fifth and Sixth Amendment rights) would fail the "individualized basis" requirement of *Scott,* and would be unconstitutional.[4] In

---

[3] Even though sex crimes are "presumption" cases, that presumption addresses flight risk and danger to others in the community; its relationship to individuals entertaining thoughts of suicide is therefore unclear. Nonetheless, where the defendant bears the burden of rebutting the presumption, he can do so in any manner he deems appropriate, such as hiring an expert of his own to address the defendant's suicide risk, as Mr. Esperante did in this case. There is nothing in the Act which suggests that he must rely upon a court-ordered expert to present his case.

[4] The Fifth Amendment is implicated because the mental health providers used by Pretrial Services tell our clients that some things they say may be disclosed to the Government, as well as to the U.S. Probation Department. The Sixth Amendment is implicated because the contract psychiatrist used by Pretrial Services will not allow counsel to be present during the mental exam.

MOTION FOR AMENDMENT OF
CONDITIONS OF PRETRIAL RELEASE           - 14 -

fact, at least two courts have ruled that the Bail Reform Act's recently added requirement that all persons charged with sex crimes be required to participate in electronic monitoring is unconstitutional because the requirement did not take into consideration the individual circumstances of each defendant. *United States v. Crowell,* 2006 WL 3541736 (W.D.N.Y. Dec. 7, 2006); *United States v. Torres*, 2008 WL 2791883 (W.D. Tex. July 18, 2008).[5]

To be sure, the Bail Reform Act allows a magistrate judge to require, as a condition of release, that a defendant participate in mental health treatment. However, one presumes that in light of *Scott* such counseling will be ordered only when evidence in the record of the detention hearing has shown that the defendant has a particularized need for such treatment, and more importantly has shown this need without a court-ordered exam undertaken over the defendant's objection.

As if these issues were not significant enough, provisions in the Adam Walsh Act now allow the government to seek the civil commitment for up to life for any defendant who is deemed to be a violent sexual predator. *See* 18 U.S.C. §§ 4247, 4248. Crucially, that decision can be based upon anything contained in a defendant's federal record–which includes reports from examinations conducted by Pretrial Services. It has been argued by some that the Bail Reform Act protects information obtained during a pretrial mental examination from being released to others. *See* 18 U.S.C. § 3153(c)(1) ("information obtained in the course of performing pretrial services functions in relation to a particular accused shall be used only for the purposes of a bail determination and shall otherwise be confidential"). However, § 3153(c)(1) contains a glaring exception: such information can be released to U.S. Probation Officers preparing Presentence Reports. *See* 18 U.S.C. § 3153(c)(2)(C). In fact, it is our understanding that Pretrial Services is under a directive to make all information in its files available to the Probation Office. Insofar as the primary source of

---

[5] One magistrate judge in this district issued an opinion last year which has been interpreted by some to declare the Adam Walsh electronic home monitoring requirements constitutional. *United States v. Gardner,* 523 F.Supp.2d 1025 (N.D.Cal. 2007). The Federal Public Defender litigated that case, and for case specific reasons the order was not appealed. Nonetheless, as the *Torres* court noted, such a reading of the order in *Gardner* is probably misplaced. *Torres,* 2008 WL 2791883 at 11 n.2.

MOTION FOR AMENDMENT OF
CONDITIONS OF PRETRIAL RELEASE            - 15 -

1  information for civil commitment proceedings is the Presentence Report, it is clear that pretrial
2  mental examinations have the potential of being used to put a defendant in jail for the rest of his life.
3  It is because of such considerations that defense counsel have a special interest in assuring that
4  defendants' rights are carefully protected with respect to pretrial mental examinations.
5      Balancing these concerns with the legitimate interest in minimizing an potential for suicidality
6  or self-injury, Mr. Esperante has obtained a competent psychological evaluation on this issue and
7  proffered the results for the Court's consideration.   It is respectfully submitted that no further
8  evaluation is required as a precondition of his release, particularly not the controversial evaluation
9  ordered by the magistrate judge in this case.

## CONCLUSION

11      For the aforementioned reasons, the Court should amend the magistrate judge's release order
12  by deleting the condition of an unlimited psychiatric evaluation by a Pretrial Services expert outside
13  the presence of counsel.
14  Dated: August 27, 2008

                                Respectfully submitted,

                                BARRY J. PORTMAN
                                Federal Public Defender

                                   /S/

                                DANIEL P. BLANK
                                Assistant Federal Public Defender