BARRY J. PORTMAN
Federal Public Defender
DANIEL P. BLANK
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA  94102
Telephone:  (415) 436-7700

Counsel for Defendant ESPERANTE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 08-0431 PJH |
| | ) | |
| Plaintiff, | ) | DECLARATION OF DANIEL P. |
| | ) | BLANK IN SUPPORT OF MOTION |
| v. | ) | FOR AMENDMENT OF |
| | ) | CONDITIONS OF PRETRIAL |
| JEREMY ESPERANTE, | ) | RELEASE |
| | ) | |
| Defendants. | ) | |
| | ) | |

Daniel P. Blank states as follows:

1.      I am an Assistant Federal Public Defender practicing in the Northern District of California.  I was appointed to represent Jeremy Esperante in the above-captioned matter.  Based upon my investigation of this case to date, I am informed and believe that the following facts are true.

2.      Mr. Esperante was born in California in 1973 to a family of Filipino descent.  As his father was in the military, Mr. Esperante lived in Germany until he was about 5 or 6 years old.  Since that time, Mr. Esperante has lived his entire life in northern California, mainly in Vallejo, except for a short period after his parents were divorced when he lived with his mother in Las Vegas.  After Mr. Esperante graduated from high school in Vallejo in 1991, he enlisted in the Army reserves.  Mr. Esperante was honorably discharged from the Army reserves in 1998 with the rank of Private First

DECLARATION OF DANIEL P. BLANK

1    Class.  Mr. Esperante has held steady employment in office jobs.  Most recently, Mr. Esperante was

2    employed starting in 2004 as an intake representative at Managed Health Network, a comprehensive

3    mental and behavioral health services company.  During this time, Mr. Esperante was also taking

4    classes at San Francisco State University, and he received his B.A. in Communications in January

5    2008.  Mr. Esperante has no prior criminal record of any kind.

6          3.       On February 5, 2008, a federal search warrant was executed by FBI Agents at the home

7    of Mr. Esperante, an apartment where he lived by himself, on suspicion that it contained evidence

8    that he possessed and was trading images of child pornography.  Mr. Esperante was cooperative with

9    the Agents and signed a *Miranda* waiver as well as a form giving consent to search his vehicle.  The

10   Agents seized Mr. Esperante's computer, which appeared to the Agents to be actively downloading

11   child pornography, but they did not arrest Mr. Esperante.

12         4.       Shortly after the Agents left the apartment, Mr. Esperante attempted to cut his wrist

13   with at first a steak knife and then a butcher knife.  Mr. Esperante soon became frightened and began

14   telephoning friends and family members.  One friend came to Mr. Esperante's apartment and, after

15   being let in by Mr. Esperante, called 911.  Mr. Esperante was taken to S.F. General Hospital that

16   night and transferred the next day to the Langley Porter Psychiatric Hospital and Clinics at the

17   University of California, San Francisco.

18         5.       One week later, on February 12, 2008, FBI Agents "found voluminous quantities" of

19   what appeared to them to be child pornography on Mr. Esperante's seized computer.  Nevertheless,

20   Mr. Esperante still was not arrested until several months later.  Nor was any effort made to limit Mr.

21   Esperante's ability to travel, or to curtail or even monitor his use of a computer or his interaction

22   with children.

23         6.       On March 6, 2008, Mr. Esperante successfully completed four weeks of intensive in-

24   patient treatment at Langley Porter, and was then referred for out-patient treatment.  On March 28,

25   2008, Mr. Esperante successfully completed his course of out-patient treatment.  Eager to continue

26   his progress, Mr. Esperante then began individual psychotherapy with a licensed psychologist in

Vallejo.  The cost of the individual therapy was defrayed by Mr. Esperante's health insurance through his employer.  Mr. Esperante's at-risk level for self-injury was soon determined to be "very low."

7.    On or about June 29, 2008, Mr. Esperante learned that his division at Managed Health Network was being reorganized and moved from San Rafael to Irving, Texas.  As a result, Mr. Esperante was subsequently laid off with a severance package, but with a cessation of his employee health insurance coverage.  Mr. Esperante intended to obtain interim health insurance through COBRA in order to continue his individual psychotherapy but first planned with his severance money a short trip abroad to Singapore, where he has distant relatives.  Unbeknownst to Mr. Esperante, a federal indictment against him was returned on July 1, 2008, and filed under seal. While in Singapore, Mr. Esperante learned that his family's residence had been searched by the FBI. Nevertheless, Mr. Esperante returned to San Francisco as scheduled and was arrested as expected at the airport.  His initial appearance before the federal magistrate court was July 30, 2008.

8.    That same day, I was appointed to represent Mr. Esperante and he was interviewed by Pretrial Services.  During this interview, Mr. Esperante openly described his personal history, including his suicidal gesture, hospitalization and mental health treatment.  A detention hearing was held on August 4, 2008.  Although the case carried a statutory presumption for detention, Pretrial Services recommended release on conditions.  The government objected to Mr. Esperante's release and by way of proffer described the alleged conduct underlying the charges against Mr. Esperante. Over a dozen family members attended the hearing in support of Mr. Esperante.  Nevertheless, the magistrate judge indicated that he had concerns that were not addressed by the Pretrial Services recommendation.  Specifically, in light of Mr. Esperante's suicide attempt, the magistrate judge indicated that he wanted a mental health evaluation of Mr. Esperante conducted by Pretrial Services so that he could determine what type of counseling to order as a condition of his release.  I responded that I did not object to such an evaluation, as long as it was limited to the area of suicidality (rather than, for example, the facts of the current prosecution against Mr. Esperante) and I could be present

1    during this evaluation to safeguard Mr. Esperante's rights.  A further detention hearing was set for

2    August 20, 2008, to consider the results of the evaluation.

3         9.      However, on August 6, 2008, Pretrial Services sent a memorandum to the magistrate

4    judge noting a problem that had arisen with regard to the evaluation.  Specifically, the psychiatrist

5    working with Pretrial Services indicated that, although he acknowledges the concerns raised by

6    defense counsel, he was unwilling to allow any other parties to be present during the evaluation.

7    Nevertheless, the psychiatrist stated that he would not question Mr. Esperante "about any matters

8    that relate to the instant offense."  Accordingly, Pretrial Services asked that the magistrate judge set

9    an earlier status hearing for August 8, at 9:30 a.m.

10        10.     As neither government counsel nor myself were available on August 8, the government

11   submitted an unopposed motion and proposed order to take the status hearing set for that date off

12   calendar in favor of the status hearing previously set for August 20.  Nothing about the evaluation of

13   Mr. Esperante was addressed in the unopposed motion and proposed order.  On the morning of

14   August 8, before the calling of the 9:30 a.m. calendar, the magistrate judge filed the executed order

15   taking the matter off calendar, but added the following text above his signature:  "Defense counsel's

16   request to attend the evaluation session is DENIED.  Evaluation shall proceed."  Attachment A

17   (8/8/08 Order) (Docket #8).  During the 9:30 a.m. calendar on August 8, the magistrate judge then

18   began to address this issue, in open court and on the record, even though neither counsel nor Mr.

19   Esperante were present in the courtroom.  Another defense counsel, Federal Public Defender Barry

20   Portman, who happened to be in the courtroom and who happened to be familiar with Mr.

21   Esperante's case, raised an objection and the matter was reset for a status hearing on August 12,

22   2008, at 9:30 a.m.

23        11.     At the hearing on August 12, 2008, I objected to the fact that a hearing had been

24   conducted outside my presence on August 8, and made a full proffer on the record intended to

25   address each of the concerns raised by the magistrate judge, including that I planned to address the

26   issue of Mr. Esperante's potential for suicidality by having him evaluated by a retained expert

DECLARATION OF DANIEL P. BLANK

psychologist.  However, the magistrate judge responded that Mr. Esperante would not be released unless he agreed to an evaluation by a Pretrial Services psychiatrist, without defense counsel being present and with no limits on the scope of the evaluation.  For example, in response to my request for clarification, the magistrate judge explained that the Pretrial Services psychiatrist could administer a penile plethysmograph or any other test he saw fit.  At my request, the magistrate judge issued an order setting forth the required conditions of release so that I could seek review in the district court. That order issued on August 13, 2008.  *See* Attachment B (8/13/08 Order) (Docket #12).

12.    Mr. Esperante made his initial appearance before the district court on August 13, 2008. After being advised of the status of the case, the district court indicated that something needed to be done to address concerns about Mr. Esperante's potential for suicidality.  However, the district court emphasized that the solution need not be the one ordered by the magistrate judge and urged the parties to approach the issue cooperatively and creatively.  Specifically, the district court indicated that it was not inclined to detain Mr. Esperante, as long as this issue could be addressed in some way, since both Pretrial Services and the magistrate judge had determined that he can and should be released.  A briefing schedule before the district court was set for a motion to amend conditions of release to be filed on August 27, and heard on September 10, 2008.

13.    On August 20, 2008, the parties appeared briefly before the magistrate judge seeking clarification of the release order.  In response, the magistrate judge clarified that, although a particular parcel of real property was named in the order, any property owned by the family with a total of at least $200,000 in equity would suffice.  In addition, the magistrate judge was advised that Mr. Esperante's father's home in Sacramento was deemed by Pretrial Services to be a suitable place for Mr. Esperante to reside if released, and that if released there his father would take extended family leave from work to serve as his custodian.

14.    On August 21, 2008, Mr. Esperante was evaluated regarding his potential for suicidality by Dr. Rebecca Bauknight, Ph.D., a licensed clinical psychologist with over fifteen years experience in the field.  In particular, Dr. Bauknight has been conducting assessments of the suicidal potential of

1   patients since 1990.  This evaluation occurred during a contact visit at the Santa Rita jail in Alameda

2   County.  Prior to meeting with Mr. Esperante, Dr. Bauknight reviewed records of his in-patient and

3   out-patient treatment at Langley Porter and reviewed a letter from Mr. Esperante's private

4   psychotherapist.  Based upon her interview with Mr. Esperante and her review of these records, Dr.

5   Bauknight developed an opinion regarding Mr. Esperante's potential for suicidality.  She advised me

6   that her opinion is that Mr. Esperante does not pose a significant risk of suicide or self-injury at this

7   time.  Moreover, she believes that any risk of suicide would only be diminished by his release from

8   custody to live with his family.  Finally, she recommends that Mr. Esperante continue his individual

9   psychotherapy and also give serious consideration to a course of treatment with anti-depressant

10  medication.

         I DECLARE under penalty of perjury that the foregoing is true and correct to the best of my

12  knowledge.

13       Signed and dated on the 27th of August, 2008, in San Francisco, California.

             _____/S/_____

             DANIEL P. BLANK

DECLARATION OF DANIEL P. BLANK

<u>Attachment A</u>

1  JOSEPH P. RUSSONIELLO (CABN 44332)
   United States Attorney
2

3  BRIAN J. STRETCH (CABN 163973)
   Chief, Criminal Division
4

5  TAREK J. HELOU (CABN 218225)
   Assistant United States Attorney
6
   450 Golden Gate Avenue, Box 36055
7  San Francisco, California 94102
   Telephone:    (415) 436-7071
8  Facsimile:    (415) 436-7234
   Tarek.J.Helou@usdoj.gov
9

10 Attorneys for Plaintiff

11

12                 UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14                   SAN FRANCISCO DIVISION

15

16 UNITED STATES OF AMERICA,        )   CR No. 08-431 PJH
                                     )
17         Plaintiff,                )   [PROPOSED] ORDER MOVING BAIL
                                     )   REVIEW HEARING
18      v.                           )
                                     )
19 JEREMY CRUZ ESPERANTE,            )
                                     )
20         Defendant.                )
                                     )
21 _____ )

22

23      On August 4, 2008, the parties in this case appeared before the Court for the defendant's

24 detention hearing.  The Court heard argument from both parties and continued the hearing until

25 August 20, 2008.  On August 6, 2008, U.S. Pretrial Services submitted a memorandum to the

26 Court, requesting a status conference, related to the defendant's bail hearing, on August 8, 2008.

27 Government counsel is not available on August 8, 2008 because he will be out of town.  Defense

28 counsel informed government counsel, via email, that he also is unavailable on August 8, 2008.

1    Government counsel requests that the Court move the Bail Review Hearing from August 8,

2    2008, to August 20, 2008 at 1:30 p.m., or another date when the Court is available.

3

4    DATED: August 7, 2008                    JOSEPH P. RUSSONIELLO
                                              United States Attorney
5

6
                                                          /s/
7                                             TAREK J. HELOU
                                              Assistant United States Attorney
8

9        For the reasons stated above, the Court reschedules the Bail Review Hearing scheduled for

10   August 8, 2008 to August 20, 2008 at 1:30 p.m.    Defense counsel's request to attend the evaluation
                                                       session is DENIED.  Evaluation shall proceed.
11   SO ORDERED.

12

13   DATED: ___August 8, 2008___

14                                            THE HONORABLE BERNARD ZIMMERMAN
                                              United States Magistrate Judge
15

16

17

18                   IT IS SO ORDERED

19                   Bernard Zimmerman

20                   Judge Bernard Zimmerman

21

22

23

24

25

26

27

28

[Proposed] Order Moving Bail Review Hearing
CR 08-431 PJH                                                                              2

Attachment B

1

2

3

4

5

6                       UNITED STATES DISTRICT COURT

7                     NORTHERN DISTRICT OF CALIFORNIA

8

9    UNITED STATES OF AMERICA,        )
                                      )
10              Plaintiff(s),         )    No. CR 08-0431 PJH (BZ)
                                      )
11        v.                          )
                                      )    **ORDER SETTING CONDITIONS OF**
12   JEREMY CRUZ ESPERANTE,           )    **RELEASE AND DENYING REQUEST**
                                      )    **TO HAVE COUNSEL ATTEND**
13              Defendant(s).         )    **PSYCHIATRIC EVALUATION**
     _____)

14

15        The government moved to detain Jeremy Esperante on

16   August 4, 2008.  Tarek Helou, Assistant United States

17   Attorney, represented the government.  Defendant was present

18   and represented by Deputy Public Defender, Daniel Blank.

19        At the hearing, I considered the Pretrial Services Report

20   and the proffers and arguments of both sides.  I stated that I

21   was concerned about the risk of flight and the danger that

22   defendant presented to himself and the community, but thought

23   there might be conditions of release that would address those

24   concerns.  I ordered Pretrial Services to have the defendant

25   evaluated by a medical professional and then make a further

26   recommendation on appropriate conditions of release, such as

27   what forms of mental health counseling or treatment defendant

28   required and whether he required a residential program.  My

                                  1

1    concerns were heightened by the fact that defendant lives in

2    the Eastern District of California.   Therefore, he would be on

3    courtesy supervision from that district and I was uncertain

4    about what mental health treatment or counseling programs that

5    district offers.   I continued the detention hearing to August

6    20, 2008 to allow for the evaluation.

7        On August 6, 2008, I was informed by Pretrial Services

8    that the evaluator, Dr. Chamberlain, could not provide an

9    evaluation report until August 31, 2008.   I was further

10   informed by Pretrial Services that defendant had asked that

11   his counsel be present during the evaluation but that Dr.

12   Chamberlain had advised that he was unwilling to allow counsel

13   to be present during his evaluation because he felt that the

14   presence of an attorney would change the dynamics of the

15   interview and the diagnostic process and that Dr. Chamberlain

16   would not question the defendant about matters that relate to

17   the charged offense.

18       Not wanting to have the question of counsel's

19   participation delay the evaluation of a defendant who was in

20   custody, I scheduled a hearing for August 8, 2008.   Early that

21   morning, I received a joint request to continue the hearing

22   until August 20, 2008 stating that neither Mr. Helou or Mr.

23   Blank could attend on August 8, 2008.   I granted the

24   continuance but ruled that Mr. Blank would not be present

25   during the evaluation and directed that it proceed.   Later

26   that morning, during the calendar call, I asked both duty

27   attorneys to advise their colleagues of my ruling.   Mr.

28   Portman asked for a hearing, because he thought there was

2

1   authority requiring counsel's presence, citing <u>Estelle v.</u>

2   <u>Smith</u>.  I therefore stayed my order and scheduled a hearing

3   for Tuesday, August 12, 2008.  At that hearing, Mr. Blank

4   stated that he wished an immediate ruling on the government's

5   motion so he could seek review of the order preventing him

6   from attending the psychiatric evaluation.  He also announced

7   that the defendant wished to be released to his parents' home

8   in Elk Grove and not to his uncle's home in Vallejo.  The

9   latter would have permitted supervision in this district.

10      Defendant remains in custody.  So that the review of this

11  order does not unnecessarily lengthen his confinement, I have

12  decided to set forth conditions on which I would be prepared

13  to release defendant and the reasons I will not permit Mr.

14  Blank to attend the psychiatric evaluation.

15      Because of the charges he faces, defendant is presumed to

16  be a risk of flight and a danger to the community.  If

17  convicted on some of the charges, he faces a mandatory prison

18  sentence of at least 5 years.  In addition, it appears that

19  the defendant is an experienced international traveler.  His

20  most recent trip was for two and half weeks to Singapore last

21  month.  Defendant has relatives in Singapore and is in a

22  "casual relationship" with a woman from Singapore.

23      At the same time he has strong family ties to Northern

24  California and at least a dozen family members and friends

25  attended the August 4, 2008 hearing to support him.  His

26  family has offered to post significant property to secure a

27  bond.

28      As to danger, the government proffered that he was a

3

1    participant in a peer to peer file sharing program in which he

2    shared child pornography with others.  Such file sharing

3    constitutes a serious danger to the community by disseminating

4    child pornography.  It also appears that after the defendant's

5    computers were searched, he attempted suicide and was

6    hospitalized overnight at San Francisco General and then

7    transferred to UCSF hospital where he remained for two weeks.

8    This heightens the concern about danger since one who attempts

9    suicide can endanger others in the process.

10        Although I have concerns that he is a flight risk and a

11   danger to the community, I believe there likely are conditions

12   of release which would adequately address both concerns.  I

13   would be prepared to release defendant on a $200,000 bond co-

14   signed by the defendant's father and step-mother and secured

15   by property at 8854 Statira Court in Elk Grove, if that

16   property's equity is sufficient.  I would impose the other

17   conditions of release recommended by Pretrial Services.  I

18   would require him to be examined by Dr. Chamberlain and would

19   schedule a post-release hearing to consider Dr. Chamberlain's

20   evaluation and whether any conditional conditions of release

21   are necessary and appropriate.  In the interim, I would

22   release the defendant into the custody of a parent and would

23   impose a very restrictive curfew, to be reviewed after I

24   receive Dr. Chamberlain's evaluation.  I would also require

25   Pretrial Services to inspect the family home and either

26   satisfy itself that all computers have been removed or, if

27   there is a need of a computer, that appropriate monitoring

28   software is installed.  Once that has been accomplished and if

4

1   defendant is willing to be released on these conditions

2   Pretrial Services shall schedule a hearing for the purpose of

3   releasing the defendant which the sureties should attend.

4       Defendant's request to have counsel present during the

5   evaluation is **DENIED**.  As the Supreme Court noted in <u>Estelle</u>

6   <u>v. Smith</u>, 451 U.S. 454, 471 at fn.14 (1981), there does not

7   appear to be any constitutional right to have counsel attend a

8   pretrial psychiatric examination.  The Supreme Court noted

9   that "an attorney present during the psychiatric interview

10  could contribute little and might seriously disrupt the

11  examination," quoting <u>Estelle v. Smith</u>, 602 F.2d 694, 708 (5th

12  Cir. 1979).  The constitutional concerns present in <u>Estelle</u>,

13  occasioned by the psychiatrist's trial testimony, do not exist

14  here.  This evaluation is solely for the purpose of assisting

15  me in determining appropriate conditions of release, and not

16  for the purpose of developing psychiatric testimony for trial.

17  Defendant's statements to Dr. Chamberlain shall not be used

18  against him at trial.  The report provided by Pretrial

19  Services is subject to the confidentiality provisions of 18

20  U.S.C. § 3153(c)(1).  I would redact from any portions of Dr.

21  Chamberlain's report which I thought needed to be shared with

22  counsel, any information to which I thought the government was

23  not entitled.

24      **IT IS SO ORDERED.**

25  Dated: August 13, 2008

26

27                          Bernard Zimmerman
                            United States Magistrate Judge

28  G:\BZALL\CRIMINAL\ORDERS\ORDERS.08\U.S.A.V.ESPERANTE.wpd