JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

TAREK J. HELOU (CABN 218225)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102
   Telephone:   (415) 436-7071
   Facsimile:   (415) 436-7234
   Tarek.J.Helou@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 08-431 PJH |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO AMEND CONDITIONS OF PRETRIAL RELEASE |
| v. | |
| JEREMY CRUZ ESPERANTE, | Hearing Date: September 10, 2008<br>Time: 1:30 p.m.<br>Judge: The Hon. Phyllis J. Hamilton |
| Defendant. | |

USA OPP. MOT. AMEND COND. RELEASE
CR 08-431 PJH

## I.  INTRODUCTION

The Honorable Bernard Zimmerman released the defendant subject to several conditions of release.  The Court should deny the defendant's motion because the Court had the authority to impose all of the conditions, including the condition requiring the defendant to be examined by a court-appointed psychiatrist.

In this case, the Magistrate Judge, the government, and the defendant all agree that the defendant's previous suicide attempt warrants a psychiatric examination as a condition of pretrial release.  The defendant, however, is trying to usurp the Court's power by letting his retained psychiatrist decide the parameters of the examination instead of having a neutral, court-appointed psychiatrist decide them.  Under the defendant's reading of the Bail Reform Act, the Court can set general conditions of release, but the defendant will decide how to implement them.

In this case, the defendant agrees that a psychiatric examination is necessary, but refused to be examined outside the presence of his attorney.  The defendant hired his own psychiatrist, Dr. Rebecca Bauknight, to examine him.  The defendant now asks the Court to accept Dr. Bauknight's opinion that the defendant does not pose a risk of suicide without providing the bases or reasons for that opinion, or even her qualifications.  The defendant also asks the Court to rely on Dr. Bauknight's examination of the defendant even though defense counsel was at the examination.  Two neutral psychiatrists selected by the Court to examine the defendant in this case refused to conduct the examination if defense counsel – or any third person – was there.  Additionally, Supreme Court precedent has already rejected the argument that a defendant has a right to have an attorney at a psychiatric examination.  A third person can disrupt the examination, rendering it useless.

The condition that the court imposed is no different than any other condition of release – if the defendant wants to be released, he can follow the Court's order and sit for a psychiatric examination without his attorney.  If the defendant does not want to be examined without his attorney, he can refuse, and stay in custody.

//

**II.    BACKGROUND AND STATEMENT OF FACTS**

   **A.    Agents Searched The Defendant's Apartment And Seized Child Pornography**

On February 5, 2008, Immigration and Customs Enforcement ("ICE") agents executed a search warrant at the defendant's apartment. When agents entered the apartment, the defendant was downloading child pornography. Agents seized two computers containing 610 child pornography videos and 1,470 child pornography images. Later that day, the defendant tried to kill himself by slitting his wrists. The U.S. Attorney's Office and law enforcement agencies did not know that the defendant tried to kill himself until agents tried to arrest him several months later.

   **B.    Judge Zimmerman Ordered The Defendant To Undergo A Psychiatric Examination To Help Him Determine Conditions Of Release**

After the detention hearing in this case, the Honorable Bernard Zimmerman ordered the defendant released pending the satisfaction of several conditions. (Aug. 13, 2008 Order Setting Conditions of Release and Denying Request to Have Counsel Attend Psychiatric Examination ("Release Order") at 4:12-5:3.) Judge Zimmerman had determined that the defendant posed a danger to the community, a danger to himself, and a risk of flight. (Release Order at 3:28-4:12.) As Judge Zimmerman noted, the defendant tried to kill himself the same day that agents searched his apartment and seized computers containing child pornography. (Release Order at 4:4-7.) The concern about this defendant's danger to himself is not speculative – he already proved that he is a danger to himself.

Because of those dangers, Judge Zimmerman ordered, as one condition of release, that the defendant undergo a psychiatric examination. (Release Order at 1:24-28.) Judge Zimmerman ordered the examination because he wanted a psychiatric expert to determine whether any additional conditions of release were necessary to alleviate the danger to the community, the danger to the defendant, and the defendant's risk of flight. (Release Order at 5:14-16.) Judge Zimmerman found that the risk of suicide in this case was real, not hypothetical, because the defendant had already tried to kill himself once. (Release Order at 4:4-9.) Judge

USA OPP. MOT. AMEND COND. RELEASE
CR 08-431 PJH                                     -2-

1  Zimmerman also found that the defendant was a risk of flight because he had ties overseas and
2  recently traveled to other countries, and that he posed a danger to the community, noting that he
3  was charged with child pornography crimes.  (Release Order at 3:15-4:4.)  The Court also found
4  that if the defendant were to attempt suicide again, in addition to the obvious danger that he
5  would pose to himself, he could harm others while doing so.  (Release Order at 4:4-9.)

### C. Two Court-Appointed Psychiatrists Refused To Examine The Defendant With Counsel Present

The Court exercised its authority under the Bail Reform Act and ordered the defendant to undergo an examination by a psychiatrist selected by Pretrial Services.  Pretrial Services chose Dr. John Chamberlain, who refused to examine the defendant with defense counsel present.  (Release Order at 2:7-17.)

Judge Zimmerman then filed his written order, permitting the defendant to be released on August 20, 2008, and examined while out of custody on August 21, 2008.  Pretrial Services contacted another psychiatrist, Dr. Lisa Kalich of Sharper Future, an organization that performs psychiatric examinations on behalf of Pretrial Services.  (Declaration of Tarek J. Helou in Support of The Government's Opposition to the Defendant's Motion to Amend Conditions of Pretrial Release ("Helou Decl."), ¶ 4.)  Dr. Kalich also refused to examine the defendant with counsel present.  (Helou Decl., ¶ 5.)  Sharper Future's psychiatrists do not examine patients with third parties present.  (Helou Decl., ¶ 6.)  This prohibition extends not only to attorneys, but even to patients' parents and spouses.  (Helou Decl., ¶ 6.)

## III. ARGUMENT

### A. The Bail Reform Act Grants The Court The Authority To Order A Psychiatric Examination As A Condition Of Release

Under the Bail Reform Act, the Court can set conditions of pre-trial release, including a condition requiring the defendant to undergo psychiatric treatment.  18 U.S.C. § 3142(c)(1)(B)(x).  In this case, the Court properly found that the defendant poses a danger to himself, a danger to others, and a risk of flight.  As the government proffered at the initial detention hearing, the defendant was charged with distributing, receiving, and possessing child

1  pornography. Those crimes are violent crimes for purposes of detention. 18 U.S.C. §
2  3156(a)(4)(C). The government also proffered that those crimes can be committed easily,
3  requiring nothing more than Internet access. Computers seized from the defendant had 610 child
4  pornography videos and 1,470 child pornography images. The government also proffered that
5  the defendant had traveled overseas several times, and had tried to commit suicide.

6       The Court set conditions of release that it believed would alleviate those risks, including
7  a mental examination performed by a psychiatrist retained by Pretrial Services. The defendant's
8  opening brief largely ignored § 3142(c)(1)(B)(x), but conceded that it gives the Court the
9  authority to order mental evaluations of defendants. (Def. Mot. at 13:10-13.) The defendant
10 tried to dismiss that section by arguing that the defendant – not the Court – can determine the
11 substance of those examinations and whether defense counsel can be present. (Def. Mot. at
12 16:5-9.) In essence, the defendant is arguing that the Court's appointed psychiatrists, Drs.
13 Chamberlain and Kalich, cannot conduct the examination as they see fit.

14      The defendant relies on *United States v. Martin-Trigona*, 767 F.2d 35 (2d Cir. 1987) but
15 misstates its holding and its application to this case. In *Martin-Trigona*, the district court
16 detained the defendant pending trial. *Id.* at 37. The Second Circuit ordered the defendant to
17 undergo a psychiatric examination to determine whether he posed a danger or risk of flight. *Id.*
18 Thus, in *Martin-Trigona*, the district court ordered a mental examination not to give the
19 defendant treatment or to determine what conditions of release could alleviate his danger or risk
20 of flight, but to help the government in establishing its burden of proof at the detention hearing.
21 *Id.* at 38. The Second Circuit reversed the order, holding that the district court could not order a
22 psychiatric examination to determine the defendant's dangerousness. *Id.*

23      By contrast, in this case, Judge Zimmerman first determined that the defendant posed a
24 danger to the community, a danger to himself, and a risk of flight. (Release Order at 3:15-4:9.)
25 Judge Zimmerman *then* ordered the defendant to have a psychiatric examination to determine
26 what conditions could alleviate those dangers. *Martin-Trigona* specifically distinguished its
27 holding from cases decided under § 3142(c)(2)(J), now § 3142(c)(1)(B)(x), which Judge
28 Zimmerman relied on when he ordered a psychiatric examination as a condition of release. The

USA OPP. MOT. AMEND COND. RELEASE
CR 08-431 PJH                                      -4-

Second Circuit noted the difference between orders like the one it vacated, which ordered examinations to determine dangerousness, and orders like the one in this case, where the court had already determined that the defendant posed a danger or risk of flight, and then ordered a psychiatric examination after deciding that treatment or further examination was necessary. *Id.* at 38.

### B. The Defendant Is Not Entitled To Have His Attorney Present At A Court-Ordered Psychiatric Examination

#### 1. The Fifth Amendment Is Not Implicated Because The Defendant Knows That His Statements Could Be Used Against Him

The defendant's Fifth Amendment rights are not implicated here because he is not being compelled to talk to Dr. Chamberlain or Dr. Kalich absent a waiver. In *Estelle v. Smith*, 451 U.S. 454 (1981), the Court found a Fifth Amendment violation when a defendant was interviewed by a psychiatrist, but on different facts. In *Estelle*, the defendant was charged with murder. *Id.* at 456. The judge had ordered a competency examination to determine if the defendant was fit to stand trial. *Id.* at 456-57. That examination was arranged by the prosecution, not the Court. *Id.* The defendant was convicted and faced the death penalty. *Id.* at 457-58. During the penalty phase, the government used the results of the pretrial psychiatric examination to prove that, among other things, the defendant would continue to commit murder if he was released. *Id.* at 459-60. Based on that finding, the jury sentenced the defendant to death. *Id.* at 460.

In *Estelle*, the defendant was not advised that he had the right to remain silent and refuse to speak with the psychiatrist conducting the court-ordered examination. *Id.* at 461-62. Because of that error, the Supreme Court affirmed the order vacating the defendant's sentence. *Id.* at 469.

By contrast, in this case, there will be no Fifth Amendment error. As the defendant concedes, he knows that he can refuse to speak to Dr. Chamberlain, Dr. Kalich, or any other psychiatrist, and that if he chooses to speak to them, his statements could be used against him at some point. (Def. Mot. at 14:25-26 n.4.)

//

**2.    The Defendant Does Not Have A Sixth Amendment Right To Counsel At A Psychiatric Examination To Determine Conditions Of Release**

In *Estelle*, the Supreme Court recognized that the Sixth Amendment does not guarantee a defendant the right to have counsel present at a psychiatric examination. *Id.* at 470 n.14. The Supreme Court noted that an attorney could contribute little to the examination, and might seriously disrupt it. *Id.* Furthermore, the error that the Supreme Court found in *Estelle* was that the defendant was denied the assistance of his attorneys in deciding *whether* to be examined by a psychiatrist. *Id.* at 470-71. The Sixth Amendment violation was not that the defendant was examined without his attorneys. *Id.*

The facts of *Estelle*, described above, are much different than the facts of this case. Here, the defendant has had the assistance of counsel in deciding not to be examined. (*See, e.g.,* Def. Mot. at 6:7-10.) By contrast, in *Estelle*, the defendant did not. Additionally, the psychiatric examination at issue here relates to a bail hearing. In *Estelle*, the defendant was deprived of his right to counsel when deciding whether to submit to a psychiatric examination that was later used to sentence him to death. *Id.* at 459-60. That was literally a life and death situation. Therefore, the defendant's interest in having the assistance of counsel was much greater in *Estelle* than in this case.

The defendant has not cited any authority supporting his argument that he can have counsel present during a court-ordered psychiatric examination. Although the Ninth Circuit has not addressed this issue, other federal circuit courts have agreed with *Estelle*, held that a psychiatric examination is not a "critical stage" of criminal proceedings, and rejected arguments that defense attorneys should be able to attend those examinations. *See, e.g., Hollis v. Smith*, 571 F.2d 685, 692 (2d Cir. 1978) ("It is difficult to imagine anything more stultifying to a psychiatrist, as dependent as he is upon the cooperation of his patient, than the presence of a lawyer objecting to the psychiatrist's questions and advising his client not to answer this question and that."); *United States v. Cohen*, 530 F.2d 43, 48 (5th Cir. 1976) (rejecting defendant's claim of constitutional right to have attorney present at psychiatric examination since that might defeat purpose of examination).

### 3. Two Court-Appointed Psychiatrists Refused To Examine The Defendant With Counsel Present

The medical community supports the *Estelle* Court's belief that an attorney could disrupt a psychiatric examination. As Judge Zimmerman ordered, Pretrial Services retained Dr. John Chamberlain to examine the defendant. (Release Order at 2:7-9.) Defense counsel requested to be present during the psychiatric examination. (Release Order at 2:9-11.) Dr. Chamberlain, however, refused to examine the defendant with defense counsel present. (Release Order at 2:11-12.) Dr. Chamberlain felt strongly that the presence of an attorney, or any other person, would change the dynamic of the interview and diagnosis process, and prohibit him from giving the Court a meaningful evaluation of the defendant. (Release Order at 2:12-15.) Even though Dr. Chamberlain stated that he would not question the defendant about matters related to the instant offense, the defendant refused to be interviewed. (Release Order at 2:15-17.)

After the Court agreed to release the defendant pending a psychiatric examination, Pretrial Services found a second psychiatrist, Dr. Lisa Kalich of Sharper Future, to examine the defendant because Dr. Chamberlain does not examine patients who are out of custody. (Helou Decl., ¶ 4.) Dr. Kalich, like Dr. Chamberlain, refused to examine the defendant in the presence of a third person, including defense counsel. (Helou Decl., ¶ 5.) Sharper Future's policies prohibit its psychiatrists from examining patients with any other person present, even a parent or spouse. (Helou Decl., ¶ 6.)

### C. The Defendant Cannot Offer An Expert Witness' Opinion By Proffer

Although both the government and the defendant can proceed by proffer at a detention hearing, the Court can exercise discretion and refuse to admit proffered evidence. *United States v. Gaviria*, 828 F.2d 667, 669 (11th Cir. 1987). In this case, the Court should exercise its discretion and not rely on Dr. Bauknight's expert opinion because, as explained below, proffering an expert witness' opinion is different than proffering facts.

In this case, the defendant has offered Dr. Bauknight's opinion about the defendant's psychiatric state. (Def. Mot. at 5:17-6:3.) As the defendant concedes, her opinion is expert opinion testimony. (Def. Mot. at 10:14-16). The defendant claims that Dr. Bauknight's

testimony is no different than proffers that the government made at the detention hearing. (Def. Mot. at 11:1-14.) That claim is incorrect. The government's proffers contained only facts, not opinions. The defendant could have disputed those facts if they had been incorrect or if other evidence contradicted them. By contrast, here, the government cannot dispute any aspect of Dr. Bauknight's report. The government cannot have its own psychiatrist examine the defendant. The government also cannot challenge Dr. Bauknight's opinions because the government cannot review her notes, cannot read her report, and cannot cross-examine her about her opinions. The government cannot even determine the extent of defense counsel's participation in Dr. Bauknight's examination of the defendant, or exactly what records Dr. Bauknight reviewed.

Additionally, on August 6, 2008, the government produced to defense counsel the evidence proving the facts that the government relied on by proffer.[1] By contrast, the defendant already stated that he will give a written copy of Dr. Bauknight's report to the Court, but will not give a copy to the government. (Def. Mot. at 11:23-24, n. 2.)

### D. Detention In This Case Is Different Than Most Child Pornography Cases Because The Defendant Has Already Tried To Commit Suicide

Finally, the defendant argues that permitting a court-appointed examination in this case will lead to a blanket requirement that all defendants facing sex crime charges submit to psychiatric examinations. (Def. Mot. at 13:19-15:5.) The defendant ignores that this case is different than most cases because he tried to commit suicide before he was arrested. Consequently, *United States v. Scott*, 450 F.3d 863 (9th Cir. 2006) is irrelevant here.

Finally, the defendant cites no authority supporting his proposition that the psychiatric examination that Judge Zimmerman ordered could be used in a civil commitment proceeding under 18 U.S.C. § 4248. Putting aside the several hypothetical steps that would need to occur (conviction, sentencing, imprisonment, a civil commitment request by the government), and several years that would pass before a civil commitment proceeding were to start, it would not

---

[1] The government did not produce child pornography to defense counsel, but defense counsel viewed it at ICE's computer lab on August 25, 2008. Government counsel offered to arrange additional times for defense counsel to view the child pornography again.

USA OPP. MOT. AMEND COND. RELEASE
CR 08-431 PJH                    -8-

1 matter if the court hearing that proceeding could see the results of the report from this case
2 because that court could order the defendant to sit for another examination and use those results
3 in the commitment proceeding. 18 U.S.C. § 4248(b).

**IV.    CONCLUSION**

The Court should not modify the conditions of release that Judge Zimmerman imposed in this case. If the defendant decides that he does not want to be examined by a court-appointed psychiatrist, or decides that he does not want to be examined without his attorney, he can refuse. He will be detained pending trial, but the Sixth Amendment guarantees only the right to have his attorney help him make that decision, not the right to have his attorney at the examination.

DATED:    September 3, 2008        JOSEPH P. RUSSONIELLO
                                   United States Attorney


                                   /s/
                                   TAREK J. HELOU
                                   Assistant United States Attorney

USA OPP. MOT. AMEND COND. RELEASE
CR 08-431 PJH                            -9-

JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

TAREK J. HELOU (CABN 218225)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California  94102
   Telephone:     (415) 436-7071
   Facsimile:      (415) 436-7234
   Tarek.J.Helou@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JEREMY CRUZ ESPERANTE,<br><br>    Defendant. | CR No. 08-431 PJH<br><br>DECLARATION OF TAREK J. HELOU IN SUPPORT OF THE UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO AMEND CONDITIONS OF PRETRIAL RELEASE<br><br>Hearing Date:  September 10, 2008<br>Time:  1:30 p.m.<br>Judge:  The Hon. Phyllis J. Hamilton |

I, Tarek J. Helou, declare and state as follows:

    1.    I am an Assistant United States Attorney in the Northern District of California.  I am counsel of record for the United States in the above-captioned case, *United States v. Jeremy Cruz Esperante*.  I am informed and believe that the following facts are true.

    2.    On August 4, 2008, Magistrate Judge Bernard Zimmerman ordered U.S. Pretrial

1  Services to have a psychiatrist examine the defendant in this case. Pretrial Services originally
2  contracted with Dr. John Chamberlain to perform the examination.

3       3.      The defendant refused to be examined by Dr. Chamberlain without defense
4  counsel present. Dr. Chamberlain refused to examine the defendant with defense counsel
5  present.

6       4.      On August 13, 2008, Judge Zimmerman issued a written order requiring the
7  defendant to be examined by a psychiatrist, but permitting the examination to occur out of
8  custody. Because Dr. Chamberlain is only contracted to conduct in-custody examinations,
9  Pretrial Services arranged for Dr. Lisa Kalich of Sharper Future to perform the examination.

10      5.      The defendant refused to be examined by Dr. Kalich without defense counsel
11 present. Dr. Kalich refused to examine the defendant if defense counsel was going to be present
12 during the examination.

13      6.      On September 3, 2008, I spoke with Dr. Kalich. She told me that Sharper Future
14 does not allow any third parties to be present during psychiatric examinations, even spouses or
15 parents of patients. Dr. Kalich also told Pretrial Services that Sharper Future does not allow
16 third parties to be present during psychiatric examinations. Sharper Future does not allow third
17 parties to attend psychiatric examinations because their presence could disrupt the examinations.

19      I declare under penalty of perjury that the foregoing is true and correct. Sworn
20 September 3, 2008, at San Francisco, California.

                                                            /s/
                                                    TAREK J. HELOU

HELOU DECL. SUPP. USA OPP. MOT.
AMEND COND. RELEASE
CR 08-431 PJH                        -2-